## Greene et al. v. Commonwealth, by Marshall, Sheriff of Mason County.

(Decided Nov. 29, 1938.)

638

ODIS W. BERTELSMAN and FRANCIS HOOVER for appellants.

B. S. GRANNIS, D. L. WOOD, CHARLES N. HOBSON and MARION RIDER for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

This is an appeal from a judgment of the Mason circuit court, ordering the appellants, Mary B. Greene and others named in the petition, jointly and severally, to pay to the commonwealth of Kentucky and Mason County certain franchise or intangible property taxes found owing upon a retroactive assessment of their interstate Aberdeen-Maysville ferry operation, which they had omitted or failed to report for assessment and taxation, in violation of the Franchise Tax Law (sections 4077-4082 incl., Kentucky Statutes).

Further the court adjudged that the ferry business, which had been operated by its non-resident owners as a partnership for a number of years, in plying back and forth across the Ohio river between its opposite terminal points of Aberdeen, Ohio, and Maysville, Kentucky, was a special and exclusive privilege or franchise, not allowed by law to natural persons, and performed a public service, bringing the operation within the provisions

and scope of the aforesaid Franchise Tax Law of the state, and accordingly adjudged that the non-resident owners and partners of the ferry pay the commonwealth of Kentucky and Mason county taxes and penalties thereon totaling $29,326.75.

The appellants seek a reversal of that judgment on the grounds: (1) that the court erred in overruling appellants' motion to quash the process, the service thereof and the return thereon and that due process of law was denied; and (2) that the tax sought to be levied and collected was repugnant to the laws of Kentucky and the Constitution of the United States, as it would constitute an interference with the free and common use of the Ohio river, guaranteed by the compact with Virginia, and would impose an unwarranted burden upon interstate commerce.

They contend that it is shown by the record that process was never served upon any of the appellants and that they, by motions to quash and reservation of their rights, upon same being overruled, each objected to the jurisdiction of the court throughout the proceedings and to the judgment. Further, they insist that the attention of the court was constantly directed to the fact that process had not been issued, as mandatorily required by the statutes governing actions to assess omitted property, and that, in any event, the court in this case could not acquire jurisdiction by substituted service.

After a very careful review and consideration of the whole record, we are of the opinion that of the several grounds here assigned by appellants for reversal of the judgment, we are concerned, first, with the procedural question as to whether or not the trial court acquired jurisdiction over the persons of the appellants by substituted service of process, as was here attempted to be made upon them, and, second, whether or not, if the attempted substituted service of process was ineffective for the court's acquiring jurisdiction over the persons of defendants, the defendants waived the question of such want of jurisdiction by thereafter taking steps to contest the case upon its merits, even though reserving exceptions to the court's ruling upon their motion to quash the substituted service of process upon them.

Looking now to the facts and circumstances of the case under which these questions are presented, they are

disclosed by the record to be that the appellants, Mary B. Greene et al., had continuously, for many years prior to the bringing of this action, plied a ferry across the Ohio river, to and fro between the town of Aberdeen, Brown County, Ohio, its home port, and the opposite town of Maysville, Mason County, Kentucky, as a partnership, and that they throughout such time had never made any report of their ferry operation for taxation to the Kentucky taxing authorities, nor had at any time paid any tax on its intangible property.

Also, it appears that in the year 1931 a new highway bridge had been constructed, paralleling this ferry line, by the State Highway Commission, which thereupon competed with the ferry in the business of furnishing transportation to the traveling public between these towns; that later in this year, negotiations were had between the Highway Commission and the appellants looking to the termination of this competition, by purchasing from appellants their ferry operation, and which were duly consummated by them and the ferry sold the state in November of that year, after which the appellants' ferry and all its equipment were taken away, leaving no property or business whatever in this state to be controlled or managed by them or their agents or attorneys.

It also appears that in making this sale of the ferry to the Highway Commission, appellants were represented by two attorneys, Mr. Francis Hoover, an attorney of Cincinnati, Ohio, and Mr. Leslie Morris, an attorney of Frankfort, Kentucky; also, that they were represented by these same attorneys on their trial in the Franklin Circuit Court under certain indictments which had been earlier in January and April of the year 1931 returned against them in the Franklin circuit court, wherein they had been adjudged guilty of the statutory offense there charged, of the willful refusal to report their ferry operation for tax purposes.

From this judgment an appeal was prosecuted to this court, and was pending at the time this action or proceeding was filed in April, 1932, in the Mason county court, on relation of its sheriff, against the appellants, seeking a retroactive assessment and taxation of the intangible property of their ferry operation, which they had failed to report to the taxing authorities of this state.

A substituted service of process was attempted to be made upon the appellants, as former owners of this ferry operation, under the provisions of Section 51, subsection 6, Civil Code of Practice, by leaving copies of the summons issued for them in the action with the Hon. Leslie W. Morris in Franklin county, the place of his residence, and also with the Hon. W. D. Cochran in Mason county, who had previously represented them in some particular instances of employment, as their being, by reason of such employment, the defendants' agents and persons in charge of their ferry business in the state.

The attorneys at once specially appeared, without entering their appearances therein but solely for the purpose of objecting to the jurisdiction of the court over the persons of the said non-resident defendants, and filed motion to quash the summons and service of summons and to hold for naught the return of said attempted service, each further filing an affidavit in support of the motion, stating respectively that he was not the agent or attorney for any of the defendants in the pending tax action, nor had in his possession any property of any of the defendants sought to be listed for taxation therein.

Whereupon the action being submitted on defendants' motion to quash the summons and return thereon, the court overruled same, when, the defendants declining to plead further, the county court entered judgment according to the prayer of the petition for the plaintiff. Defendants prosecuted an appeal from this judgment to the Mason circuit court, where the case was tried de novo upon the same issues and wherein the non-resident defendants specially appeared by their attorneys for the sole purpose of challenging the jurisdiction of the court over their persons and moving to quash the attempted substituted service of process and return thereon made upon their special attorneys, Morris and Cochran.

The court again overruled the motion to quash, to which ruling exceptions were reserved, when, without waiving same, the defendants proceeded to contest the merits of the suit by filing a demurrer to the petition and also an answer when, after issues were joined and the case submitted, the court adjudged, as stated supra, that the plaintiff should recover against defendants, jointly and severally, the taxes retroactively assessed

against them upon their formerly owned ferry operation of some $29,000.

Looking now to the first of these question before us, as to whether or not the trial court erred in holding the attempted substituted service of summons upon these local attorneys for the non-resident defendants was good or effective to confer jurisdiction over their persons in the trial court, it is to be noted that the provisions of the code (section 51, subsection 6), permitting substituted service of process upon non-residents in the special instances therein prescribed, are that:

"In actions against an individual residing in another State, or a partnership,  *  *  .  *  the members of which reside in another State, engaged in business in this State, the summons may be served on the manager, or agent of, or person in charge of, such business in this State, in the county where the business is carried on, or in the county where the cause of action occurred."

We have frequently held that this code provision, permitting substituted service in the instances provided for, is to be strictly construed.

In the rather recent case of Andrews Brothers v. McClanahan, Manager, 220 Ky. 504, 295 S. W. 457, this subsection 6 of section 51 of the Civil Code of Practice was before us for construction, wherein the defendants, Andrews Brothers, had appeared only for the purpose of entering a motion to quash the return of the summons. After the motion and accompanying affidavits were filed, the court overruled the motion and held the service good, just as here occurred, when, the defendants failing to plead further, a personal judgment went against them, from which they appealed.

In the opinion upon this appeal, the court said:

"The precise question involving the effect of service under the above-quoted subsection has been recently passed upon by the Supreme Court of the United States. In the case of Flexner v. Farson et al., 248 U. S. 289, 39 S. Ct. 97, 63 L. Ed. 250, appealed to the Supreme Court of the United States from the Supreme Court of Illinois, the validity of a service under this subsection was involved.  *  *  *

"The case was then appealed to the Supreme Court of the United States, and Mr. Justice

Holmes, after stating the facts, and upon the assumption that Flexner was the agent in Kentucky of the nonresident firm at the time the transaction occurred in Kentucky, said:

" 'It is argued that the pleas tacitly admit that Washington Flexner was agent of the firm at the time of the transaction sued upon in Kentucky, and the Kentucky statute is construed as purporting to make him agent to receive service in suits arising out of the business done in that state. On this construction it is said that the defendants by doing business in the state consented to be bound by the service prescribed. * * * But the consent that is said to be implied in such cases is a mere fiction, founded upon the accepted doctrine that the states could exclude foreign corporations altogether, and therefore could establish this obligation as a condition to letting them in. * * * The state has no power to exclude the defendants and on that ground without going farther the Supreme Court of Illinois rightly held that the analogy failed, and that the Kentucky judgment was void. If the Kentucky statute purports to have the effect attributed to it, it cannot have that effect in the present case.' "

Approving the opinion in the Flexner Case, the court further said:

"The distinction pointed out in that opinion between the power of the state to provide for substituted service upon nonresident corporations doing business in it, because the state in the exercise of the police power has the right to entirely exclude such corporations from doing business within its borders, and the power of the state to obtain jurisdiction by substituted service of nonresident individuals or partnerships, is too clear for elucidation. The right to fix the terms upon which a nonresident corporation may do business in the state is fundamentally different from the power to subject nonresident individuals to the jurisdictions of the courts by substituted service. * * * It is not due process of law to acquire jurisdiction to enter a personal judgment by a substituted service upon an individual or partnership composed of persons none of whom are served within the jurisdiction."

But apart from this, it is obvious from the very

language of the subsection under consideration, permitting a substituted service on a non-resident owner by a service upon the manager, agent or person in charge of such business in this state, in the county where the business is carried on, that it applies to a very different factual situation from that here presented, where the non-resident defendants did not, at the time such substituted service was attempted, own any property or carry on any business in Kentucky and, necessarily, did not have a manager, agent or person in charge of something they didn't own or have in the state.

We, therefore, are led to conclude that clearly the court erred in holding the substituted service made upon the attorneys for the non-resident ferry partners was effective or sufficient to acquire jurisdiction over the persons of the defendants, merely by reason of their former employment by the non-residents in other matters.

Having reached the conclusion that the court, for such reasons, clearly erred in overruling the defendants' motion to quash the attempted substituted service of process, the question that next arises is whether the defendants did thereafter, by filing a general demurrer and answer to the petition, and by contesting the case upon its merits, even though reserving exceptions to the court's earlier erroneous ruling, enter their general appearance in the action and thereby confer jurisdiction on the court over their persons and waive the court's lack of jurisdiction, though not having been acquired under the ineffective substituted service of process upon them.

While the rule is, as set out and stated in 3 Am. Jur. 804, sec. 34, that "in order to acquire jurisdiction over the person of a non-resident of the state by the service of process, the process must be served upon him within the state," nonetheless, as further stated in the same text, "personal jurisdiction may be acquired over a nonresident by his voluntary appearance in court."

And again, by section 35 of the same volume, it is said that: "A general appearance by the defendant, without previous objection to the process or return, is a waiver of defects in the process and in the service thereof."

In section 38, page 807, of the same volume of the same text, it is said:

"It is a general rule, although there are some exceptions to it, that a defendant, by merely appearing specially to object to the jurisdiction of the court over his person, does not give the court such jurisdiction. On the question whether a defendant waives an objection to the jurisdiction of the court over his person, made on special appearance, by contesting further proceedings after his objection has been overruled, there are two views, each supported by a long line of reported cases. There is no apparent distinction made in these cases between the various steps which the defendants may take toward contesting the merits of the cause. The decisions upholding one or the other of the rules are seemingly not influenced by the fact that the particular act done by a defendant was the filing of a demurrer, or the pleading to the merits, or the making of a motion, or some other act consistent with an intent to submit to a decision on the merits.

"According to one line of authorities a defendant who has appeared specially for the sole purpose of objecting to the jurisdiction of the court does not waive the question of jurisdiction by taking steps thereafter to contest the case upon the merits, provided, of course, he properly excepts to the overruling of his objection to the jurisdiction, and, according to many cases, provided he preserves his objection in his subsequent steps in the case. According to these authorities, it is only where the defendant pleads to the merits in the first instance, without insisting upon the illegality, that the objection is deemed to be waived. The principle underlying these decisions seems to be that the defendant, having done all that he could in objecting to the jurisdiction of the trial court over his person, should not be compelled to submit to a judgment by default as the condition of having the jurisdiction of the trial court tested on appeal. His further appearance or other acts in the case are not strictly voluntary, but are in a sense compulsory, and should not be deemed a waiver of his objections."

See also to like effect the very comprehensive annotation contained in 16 L. R. A., N. S., 178, collating the many decisions of courts of high and persuasive authority holding that the defendant does not waive his objection to the jurisdiction of the court over his person

by appearing generally, after his objection has been overruled.

See further the supplemental annotation of cases to like effect, holding that defendant's objection to the lack of jurisdiction is not waived, appearing in L. R. A. 1916E, 1082, and Rush v. Childers, Presiding Judge, etc., 209 Ky. 119, 272 S. W. 404. In the latter case it was held that an appeal from a judgment is not a general appearance, so as to waive objection to jurisdiction of the lower court, as provided by section 734a, Civil Code of Practice, and that an appeal from a judgment on motion to quash summons will not constitute a "general appearance" in an action, so as to waive objection, properly taken, to jurisdiction of the lower court.

It is clear that this court has adopted the rule announced in the above line of decisions, as being supported by the better reason, and as affording a more satisfactory procedural rule than the opposing line of authorities, in which it is held that a defendant is deemed to have waived any question of jurisdiction over his person by taking steps to contest the cause upon its merits, after his motion on special appearance has been overruled.

So was its election between the different holdings made in these two lines of differing authorities announced by us in the case of Brumleve v. Cronan, 176 Ky. 818, 197 S. W. 498, where we said, in an opinion delivered by Judge Hurt, that [page 505]:

"The doctrine does not prevail in this jurisdiction, which holds that, although a defendant objects in every possible way to the court assuming jurisdiction of his person, that when his objections are overruled and he pleads to the merits of the action, or does any act which constitutes a defense upon the merits, that he should be considered as having waived all objections to the jurisdiction, which he made in the first instance. The better rule seems to be, that if the defendant makes objection to the jurisdiction in the first instance, and does not in any way abandon his objection, that when his objections are overruled, and he is compelled to make further defense and does so to the merits of the action, he will not be held to have waived his objection to the jurisdiction."

Having reached these conclusions, as stated, supra,

that the lower court committed a reversible error in overruling the defective substituted service of process, as here attempted, upon appellants, under which it acquired no jurisdiction over their persons and, further, that the appellants, having reserved exceptions to the ruling, by later contesting the case upon its merits did not enter such general appearance in court as was effective to waive the question of its challenged jurisdiction over their persons, it follows, the lower court's determination of these jurisdictional questions being not in harmony with our views, that its judgment must be reversed.

Deeming our conclusions reached upon these jurisdictional questions to be decisive of the case, we express no opinion as to any other of the questions raised and argued upon the appeal, but same are expressly reserved.

Judgment reversed.